09:44AM

1

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

2

3

4   UNITED STATES OF AMERICA,          )
                                        ) Case No. 1:13-CR-00151
5                                       )            (RJA)(JJM)
                    Plaintiff,          )
6                                       )
    vs.                                 ) August 8th, 2019
7                                       )
    RYAN C. LANDER,                     )
8                                       )
                    Defendant.          )
9

10

## TRANSCRIPT OF SENTENCING
11   BEFORE THE HONORABLE RICHARD J. ARCARA
## SENIOR UNITED STATES DISTRICT JUDGE

12

13

<u>APPEARANCES</u>:

14

For the Plaintiff:    JAMES P. KENNEDY, JR.
15                    UNITED STATES ATTORNEY
                      BY:  MICHAEL DIGIACOMO, ESQ.
16                    ASSISTANT UNITED STATES ATTORNEY
                      138 Delaware Avenue
17                    Buffalo, NY 14202

18   For the Defendant:   LOSI & GANGI
                      BY:  PATRICK J. BROWN, ESQ.
19                    147 Linwood Avenue
                      Buffalo, NY 14209
20
    Probation Officer:   LINDSAY MACALUSO
21
    Court Reporter:      MEGAN E. PELKA, RPR
22                    Robert H. Jackson Courthouse
                      2 Niagara Square
23                    Buffalo, NY 14202

24

25

| | | |
|---|---|---|
| 09:44AM | 1 | THE CLERK:  Criminal action 2013-151A.  United States |
| 09:44AM | 2 | v. Ryan C. Lander. |
| 09:44AM | 3 | THE COURT:  Have a seat Mr. Brown, Mr. DiGiacomo.  Go |
| 09:44AM | 4 | ahead. |
| 09:44AM | 5 | THE CLERK:  Sentencing. |
| 09:44AM | 6 | MR. BROWN:  Thank you, Judge. |
| 09:45AM | 7 | THE CLERK:  Counsel, please state your name and the |
| 09:45AM | 8 | party you represent for the record. |
| 09:45AM | 9 | MR. DIGIACOMO:  Good morning.  Michael DiGiacomo for |
| 09:45AM | 10 | the United States. |
| 09:45AM | 11 | MR. BROWN:  Patrick Brown for the defendant, Judge. |
| 09:45AM | 12 | And for the record, Mr. Lander is present. |
| 09:45AM | 13 | THE COURT:  Are we ready? |
| 09:45AM | 14 | MR. DIGIACOMO:  Yes, Your Honor. |
| 09:45AM | 15 | MR. BROWN:  Judge, I just spoke to Mr. Lander and |
| 09:45AM | 16 | he's raised an issue within the last day or two on the docket. |
| 09:45AM | 17 | There's a pro se motion that he filed and I don't know if the |
| 09:45AM | 18 | Court has seen that or not. |
| 09:45AM | 19 | And he raises this issue, Judge, if you recall, the |
| 09:45AM | 20 | government originally made a motion to not have Mr. Lander |
| 09:45AM | 21 | receive the benefit of the third level for acceptance of |
| 09:45AM | 22 | responsibility and then, yesterday filed a motion rescinding |
| 09:45AM | 23 | that earlier motion and recommending that he does receive the |
| 09:46AM | 24 | full three levels for acceptance.  And we also have the |
| 09:46AM | 25 | presentence report was revised again yesterday to reflect the |

09:46AM  1   three levels for acceptance.  Mr. Lander, Judge, believes that

09:46AM  2   the fact that the government earlier on moved to deny him the

09:46AM  3   one level, notwithstanding the fact that yesterday moved that

09:46AM  4   he get the one level, results in a breach of the plea

09:46AM  5   agreement and he would like me to explore that issue.

09:46AM  6           THE COURT:  How much time would you like to have?

09:46AM  7           MR. BROWN:  Judge, I think maybe that's something

09:46AM  8   that could be done in short order, a week or two.

09:46AM  9           MR. DIGIACOMO:  Judge, we're completely opposed to

09:46AM  10  that.  Number one, I'm not aware of this case law.  The

09:46AM  11  government can make motions at any point in time.  The

09:46AM  12  government elected to withdraw that motion for reasons that we

09:47AM  13  felt that was the appropriate thing to do.  We've taken the

09:47AM  14  defendant back to the original negotiated position, which he

09:47AM  15  wanted.  And let's move the matter for sentencing.  The

09:47AM  16  problem that we have here, Judge, is a history of this

09:47AM  17  defendant wanting to delay this day for years.  We're three

09:47AM  18  years into his taking this plea.

09:47AM  19          This Court has given him hearings, new lawyers,

09:47AM  20  everything.  He just doesn't want today to happen and today is

09:47AM  21  the day that the Court has scheduled for sentencing.  He is in

09:47AM  22  the position he was when he negotiated and entered this plea

09:47AM  23  three plus years ago.  I'm unaware of this case law.  I think

09:47AM  24  all this is is a further delay tactic on the part of

09:47AM  25  Mr. Lander to be in control, the same control he demonstrated

09:47AM    1    over the victims of this case.  Well, I think, Judge, the time

09:47AM    2    is to tell Mr. Lander he's done calling the shots and this

09:48AM    3    matter should move for sentencing today as scheduled so we get

09:48AM    4    some finality.

09:48AM    5            THE COURT:  Did you say there's a case on this,

09:48AM    6    Mr. Brown?

09:48AM    7            MR. BROWN:  Judge, excuse me.  It's -- I'm not aware

09:48AM    8    of it, but Mr. Lander sent me a letter and it just arrived the

09:48AM    9    other day.  And the case that he cites, Judge, is *Griffin* and

09:48AM   10    it's a Second Circuit case, apparently 510 F.3d 354 at page

09:48AM   11    360.

          12            THE COURT:  Wait.  510.

          13            MR. BROWN:  F.3d.

          14            THE COURT:  F.3d.  What is it?

          15            MR. BROWN:  354.

          16            THE COURT:  354.

09:48AM   17            MR. BROWN:  And in particular, Judge, page 360.  And

09:48AM   18    I haven't read the case, Judge.  It's apparently the sent --

09:48AM   19            THE COURT:  Well, why don't you -- you've got

09:48AM   20    30 minutes.  Take a look at it.

09:48AM   21            MR. BROWN:  Okay.  I'll run down to the library.

09:48AM   22            THE COURT:  I'll take a look at it right now.

09:48AM   23            MR. BROWN:  Okay.  Thank you.

10:13AM   24            THE CLERK:  All rise.

10:13AM   25    (Brief recess.)

U.S. v. LANDER -- SENTENCING -- 8/8/19

4

| | | |
|---|---|---|
| 10:16AM | 1 | THE CLERK:  All rise.  You may be seated. |
| 10:54AM | 2 | THE COURT:  Mr. Brown, do you have anything further |
| 10:54AM | 3 | to say as far as the *Griffin* case is concerned? |
| 10:54AM | 4 | MR. BROWN:  Judge, both Mr. DiGiacomo and I went to |
| 10:54AM | 5 | the library and did look at *Griffin.*  And I guess, Judge, I |
| 10:54AM | 6 | would only say that I would just rest on the papers that |
| 10:54AM | 7 | Mr. Lander has filed regarding this. |
| 10:54AM | 8 | THE COURT:  All right.  Mr. DiGiacomo? |
| 10:54AM | 9 | MR. DIGIACOMO:  Judge, our position is that *Griffin* |
| 10:54AM | 10 | has no bearing.  The facts are completely different than the |
| 10:54AM | 11 | facts we have here.  The Court should not give it any |
| 10:54AM | 12 | consideration, nor should they give any consideration to |
| 10:55AM | 13 | Mr. Lander's paper because Mr. Lander has been represented by |
| 10:55AM | 14 | Mr. Brown throughout this proceeding.  Mr. Brown responded on |
| 10:55AM | 15 | his behalf to -- when I originally filed that motion, as well |
| 10:55AM | 16 | as filed objections.  There was an appropriate filing by |
| 10:55AM | 17 | Mr. Brown.  The government has since withdrawn that request. |
| 10:55AM | 18 | Therefore, Mr. Lander's papers -- he's not pro se. |
| 10:55AM | 19 | His papers shouldn't even be considered by this Court, but |
| 10:55AM | 20 | with all that being said, Judge, we take the position *Griffin* |
| 10:55AM | 21 | does not apply and therefore, this Court should proceed with |
| 10:55AM | 22 | sentencing today of the defendant. |
| 10:55AM | 23 | THE COURT:  All right.  Come on back here at 11:15. |
| 10:55AM | 24 | I'm carefully considering the *Griffin* case.  I wanted to hear |
| 10:55AM | 25 | counsel first and at 11:15 we'll have the sentencing. |

5

| | | |
|---|---|---|
| 10:55AM | 1 | MR. DIGIACOMO:  Okay, thanks. |
| 10:55AM | 2 | THE COURT:  Or I'll decide that issue.  Court will be |
| 10:55AM | 3 | in recess. |
| 10:55AM | 4 | THE CLERK:  All rise. |
| 10:56AM | 5 | (Brief recess.) |
| 11:15AM | 6 | THE COURT:  All right.  We ready? |
| 11:15AM | 7 | MR. DIGIACOMO:  Yes, Your Honor. |
| 11:15AM | 8 | MR. BROWN:  Yes, Judge. |
| 11:15AM | 9 | THE COURT:  Okay.  The defendant, Ryan C. Lander, is |
| 11:15AM | 10 | before the Court for sentencing on his previous plea of guilty |
| 11:15AM | 11 | to one count of production of child pornography, in violation |
| 11:15AM | 12 | of Title 18, United States Code, Section 2251(a) and 2251(e). |
| 11:15AM | 13 | I know, Mr. Brown, you reviewed the report with all |
| 11:15AM | 14 | the additions and I assume you reviewed it with your client? |
| 11:15AM | 15 | MR. BROWN:  Yes, Judge. |
| 11:15AM | 16 | THE COURT:  The Court hereby accepts the terms and |
| 11:16AM | 17 | conditions of the plea agreement and the plea of guilty.  I |
| 11:16AM | 18 | will now place the report in the record under seal.  If an |
| 11:16AM | 19 | appeal is filed, counsel on appeal will be permitted access to |
| 11:16AM | 20 | the sealed report, except that counsel on appeal will not be |
| 11:16AM | 21 | permitted access to the recommendation section. |
| 11:16AM | 22 | The parties have filed the appropriate statement of |
| 11:16AM | 23 | parties with respect to sentencing factors.  There's no |
| 11:16AM | 24 | dispute about the facts in the report and therefore, the Court |
| 11:16AM | 25 | adopts these facts as its finding of fact and hereby |

U.S. v. LANDER -- SENTENCING -- 8/8/19                        6

11:16AM   1    incorporates them in the record.

11:16AM   2         As for the applicable guidelines, the parties each

11:16AM   3    raised objections to the recommendation with respect to the

11:16AM   4    acceptance of responsibility downward adjustment.  The parties

11:16AM   5    have reached a last-minute agreement, however, with respect to

11:16AM   6    that recommendation, pursuant to 1B1.2(a).

11:16AM   7         The parties agreed in the plea agreement that the

11:16AM   8    defendant's sentencing range for imprisonment and a fine shall

11:16AM   9    be determined as if he was convicted of two counts of

11:16AM  10    production of child pornography, in violation of Title 18,

11:17AM  11    United States Code, 2251A, for the production of child

11:17AM  12    pornography count as to victim number 1.

11:17AM  13         The report also recommends that the defendant's base

11:17AM  14    offense level, under Guideline Section 2G2.1(a), is 32.  The

11:17AM  15    report also recommends a four-level upward adjustment,

11:17AM  16    pursuant to Guideline Section 2G2.1(b)(1)(A), as the instant

11:17AM  17    offense involved a minor under the age of 12.  The report also

11:17AM  18    recommends a two-level upward adjustment, pursuant to

11:17AM  19    Guideline Section 2G2.1(b)(2)(A), as the instant offense

11:17AM  20    involved sexual contact.  The adjusted offense level subtotal

11:17AM  21    total is 38.

11:17AM  22         For the production of child pornography count as to

11:17AM  23    victim 2, the report recommends that the defendant's base

11:17AM  24    offense level, under Guideline Section 2G2.1(a), is 32.  The

11:18AM  25    report also recommends a four-level upward adjustment,

11:18AM  1  pursuant to Guideline Section 2G2.1(b)(1)(A), as the instant

11:18AM  2  offense involved a minor under the age of 12.  The report also

11:18AM  3  recommends a two-level upward adjustment, pursuant to

11:18AM  4  2G2.1(b)(2)(A), as the instant offense involved sexual

11:18AM  5  contact.  The adjusted offense level, the subtotal is 38.

11:18AM  6  After these calculations, the multiple count adjustment is

11:18AM  7  applied, pursuant to Guideline Section 3D1.4 and the combined

11:18AM  8  adjusted offense level is calculated at 40.

11:18AM  9       The report initially recommended a two-level downward

11:18AM  10  adjustment based upon the defendant's acceptance of

11:18AM  11  responsibility.  As noted previously, both parties initially

11:18AM  12  objected to this recommendation, although the United States

11:18AM  13  later adopted it and the probation officer later amended the

11:18AM  14  recommendation to add a third level, based upon the

11:19AM  15  government's motion, pursuant to 3E1.1(b).

11:19AM  16       The United States originally contended the defendant

11:19AM  17  had not accepted responsibility for his offense conduct and

11:19AM  18  should get no downward adjustment.  The United States stressed

11:19AM  19  the burden caused by the defendant's motion to withdraw his

11:19AM  20  guilty plea and the motion to reconsider the Court's initial

11:19AM  21  denial of his motion to withdraw his guilty plea.

11:19AM  22       The defendant, for his part, contended, through his

11:19AM  23  counsel, that he has fully accepted responsibility and is

11:19AM  24  entitled to the complete three-level downward adjustment for

11:19AM  25  the acceptance of responsibility under Guideline

| | | |
|---|---|---|
| 11:19AM | 1 | Section 3E1.1. |
| 11:19AM | 2 | Certainly, the defendant should not be denied the |
| 11:19AM | 3 | acceptance of responsibility downward adjustment solely for |
| 11:19AM | 4 | having sought to withdraw a guilty plea, provided the |
| 11:19AM | 5 | defendant does not falsely claim innocence.  On the other |
| 11:20AM | 6 | hand, neither is a defendant automatically entitled to a |
| 11:20AM | 7 | downward adjustment as a matter of right because of a grudging |
| 11:20AM | 8 | admission of guilt.  See Guideline Section 3E1.1, comment |
| 11:20AM | 9 | note 3. |
| 11:20AM | 10 | The defendant's statement to the U.S. Probation |
| 11:20AM | 11 | Office, as recounted in the presentence investigation report |
| 11:20AM | 12 | at paragraphs 23, 24, 25 and 26, and very generally admits to |
| 11:20AM | 13 | sexual contact that he had with his victims in order to make |
| 11:20AM | 14 | child pornography. |
| 11:20AM | 15 | But the Court has seen a pattern of behavior on the |
| 11:20AM | 16 | part of the defendant that shows the defendant tends to |
| 11:20AM | 17 | deflect personal responsibility and finds it difficult to take |
| 11:20AM | 18 | responsibility for his own conduct.  Unfortunately, that |
| 11:20AM | 19 | pattern has been evident during this case.  For example, |
| 11:21AM | 20 | during the proceedings -- Mr. DiGiacomo, have a seat. |
| 11:21AM | 21 | MR. DIGIACOMO:  Thank you, Your Honor. |
| 11:21AM | 22 | THE COURT:  During these proceedings, the defendant's |
| 11:21AM | 23 | motion to withdraw his plea, the defendant sought to blame the |
| 11:21AM | 24 | investigative agents who talked their way into his home and |
| 11:21AM | 25 | who talked him into allowing them to seize evidence of his |

11:21AM   1   crimes for allegedly violating his Fourth Amendment rights.

11:21AM   2   It became apparent to the Court that the defendant concluded

11:21AM   3   that he made a tactical mistake in responding to the agents as

11:21AM   4   he did and then he seemed to have concluded that if he had

11:21AM   5   only refused the agents permission to enter his home, he might

11:21AM   6   have avoided some of the legal consequences of his criminal

11:21AM   7   conduct.

11:21AM   8         This is partly why the defendant sought to blame his

11:21AM   9   prior counsel for failing to obtain a court order suppressing

11:21AM   10  his incriminating denial to investigating agency that he had

11:21AM   11  actual physical sexual contact with his victims.  And it's

11:22AM   12  partly why he sought to blame his prior counsel for failing to

11:22AM   13  obtain a court order suppressing the physical evidence and

11:22AM   14  pornographic images that were seized from his home by the

11:22AM   15  agents.

11:22AM   16        The defendant even tried to claim his prior counsel

11:22AM   17  tricked him into giving up on his motion seeking to suppress

11:22AM   18  this evidence when he pleaded guilty.  The defendant claimed

11:22AM   19  to be uninformed of the substance of the motions, but it

11:22AM   20  became clear during the hearing on his motion for

11:22AM   21  reconsideration that the defendant's testimony in that regard

11:22AM   22  was false.

11:22AM   23        The defendant further blamed prior counsel and his

11:22AM   24  own father for coercing him into pleading guilty.  As the

11:22AM   25  Court has found, the defendant was not coerced.  The defendant

11:22AM 1  has demonstrated his capacity for firm resolve throughout the

11:22AM 2  post-plea proceedings in this case and the Court does not

11:23AM 3  believe that the defendant genuinely believed that he had

11:23AM 4  entered into his plea because of a psychological coercion.

11:23AM 5      Instead, the Court concludes the defendant

11:23AM 6  exaggerated his feelings that he had been presented with no

11:23AM 7  acceptable option on the plea or trial choice that he faced.

11:23AM 8  The defendant exaggerated the differences he experienced with

11:23AM 9  his former counsel in order to bolster his claim that he was

11:23AM 10 coerced by his former counsel and father in pleading guilty.

11:23AM 11     The defendant tried to make it seem like he had

11:23AM 12 experienced actual psychological coercion, so he could seek to

11:23AM 13 withdraw his plea as a way to validate his bitterness over

11:23AM 14 being treated like a criminal and to deflect attention from

11:23AM 15 his deeply disturbed sexual contact with the prepubescent

11:23AM 16 minor victims that he had used to make pornography.

11:23AM 17     The defendant's false, exaggerated testimony in

11:24AM 18 support of his motion for reconsideration of the Court's

11:24AM 19 initial denial of his motion to withdraw his guilty plea is

11:24AM 20 conduct inconsistent with the defendant having accepted

11:24AM 21 responsibility sufficiently to warrant a downward adjustment

11:24AM 22 under Guideline Section 3D1.1.

11:24AM 23     The Court has carefully read the letters submitted on

11:24AM 24 behalf of the defendant.  The Court believes the writers'

11:24AM 25 honesty and proclaim they're shocked at what the defendant had

11:24AM  1    done and state honest beliefs the defendant will never commit

11:24AM  2    another crime.   The Court hopes that they are correct in their

11:24AM  3    assessment.

11:24AM  4         Nevertheless, the downward adjustment for the

11:24AM  5    acceptance of responsibility should only be awarded by the

11:24AM  6    Court because the defendant has personally taken the first

11:24AM  7    step toward rehabilitation in an open, honest and a sincere

11:24AM  8    acceptance of responsibility for the offense conduct.   See

11:24AM  9    *United States v. Parker* at 903 F.3d 91 at page 105 (2d Cir.

11:25AM  10   1990).

11:25AM  11        In this case, the Court finds the defendant has

11:25AM  12   refused to accept how serious the crime is he committed and he

11:25AM  13   testified falsely and made exaggerated claims of coercion

11:25AM  14   while persisting in seeking to withdraw his guilty plea in

11:25AM  15   order to attempt to deflect attention from his deeply

11:25AM  16   disturbed criminal behavior.

11:25AM  17        In a letter to the Court from the defendant dated

11:25AM  18   July 31st, 2019 at Docket Number 171, the defendant recently

11:25AM  19   argued that the United States breached the parties'

11:25AM  20   February 4th, 2015 plea agreement by objecting to a downward

11:25AM  21   adjustment for the acceptance of responsibility that the

11:25AM  22   United States had agreed to in the plea agreement.   As a

11:25AM  23   remedy for the alleged breach, the defendant yet again seeks

11:25AM  24   to withdraw his guilty plea.   The parties' plea agreement

11:26AM  25   explicitly provides, at paragraph 23, subparagraph D, that the

11:26AM  1  United States may modify its position with respect to a

11:26AM  2  sentencing factor based upon conduct of a defendant after the

11:26AM  3  plea agreement was entered into.  That is what transpired

11:26AM  4  here.

11:26AM  5       Moreover, the United States subsequently filed an

11:26AM  6  amended statement with respect to sentencing factors at Docket

11:26AM  7  Number 167, which adopted the presentence investigation report

11:26AM  8  recommendation and has subsequently filed a motion to grant

11:26AM  9  the defendant's third level for acceptance.  Under these

11:26AM  10  circumstances, the Court finds the United States did not

11:26AM  11  breach the plea agreement by initially objecting to the

11:26AM  12  recommendation in the presentence report to grant the

11:26AM  13  defendant a two-level downward adjustment for the acceptance

11:26AM  14  of responsibility.

11:26AM  15       At the start of today's proceedings, defendant's

11:26AM  16  counsel brought the case of the *United States v. Griffin* at

11:26AM  17  510 F.3d 354, (2d Cir. 2007) to the Court's attention.  The

11:27AM  18  Court had to take an adjournment and has carefully considered

11:27AM  19  the case and has heard oral argument on behalf of both the

11:27AM  20  defendant as well as the government.

11:27AM  21       The prosecutor in the *Griffin* case essentially sought

11:27AM  22  a six-level offense level increase above what was agreed to in

11:27AM  23  the plea agreement at the time the sentence was imposed and

11:27AM  24  did so based upon information that had nothing to do with what

11:27AM  25  had happened after the agreement was entered into.

11:27AM  1          Here, in contrast, the Court has determined, as a

11:27AM  2   matter of fact, that the defendant gave false testimony that

11:27AM  3   he was misled by prior counsel about the substance of his

11:27AM  4   suppression motions.  The Court has also determined that the

11:27AM  5   defendant exaggerated his testimony about the circumstances

11:27AM  6   involving his prior counsel that he claimed amounted to

11:27AM  7   coercion, that caused him to give up his right to have his

11:28AM  8   suppression motion addressed and that caused him to enter his

11:28AM  9   guilty plea.

11:28AM  10          The prosecutor's early position in this case on the

11:28AM  11  issues related to whether the defendant has clearly

11:28AM  12  demonstrated acceptance of responsibility are simply

11:28AM  13  irrelevant to these factual findings and the Court's related

11:28AM  14  findings on the related circumstances.

11:28AM  15          Accordingly, even if the Court were to assume there

11:28AM  16  was a breach of the plea agreement, the breach had no effect

11:28AM  17  whatsoever on the Court's determination.  Moreover, there is

11:28AM  18  no evidence of bad faith on the part of the United States and

11:28AM  19  the outcome is not unfair to the defendant, given this conduct

11:28AM  20  after the plea agreement that is inconsistent with the

11:28AM  21  acceptance of responsibility.

11:28AM  22          The Court finds that the defendant's July 31st, 2019

11:28AM  23  correspondence to the Court expresses no remorse whatsoever

11:28AM  24  for his having used his sexual contact with prepubescent

11:28AM  25  victims to make child pornography.  The defendant does not

11:29AM   1   express any sympathy for his victims and the harm the victims

11:29AM   2   suffered and may well suffer in the future, as a result of his

11:29AM   3   abuse of them.

11:29AM   4        The July 31st, 2019 letter contains no statement

11:29AM   5   tending to show the defendant's acceptance of responsibility

11:29AM   6   for his crime.  The letter is, instead, a further example of

11:29AM   7   the defendant's unfortunate emphasis of his personal

11:29AM   8   grievances, instead of on the difficult task that he faces of

11:29AM   9   coming to grips with his responsibility for his criminal

11:29AM   10  conduct.

11:29AM   11       In summary, the defendant has elevated his personal

11:29AM   12  feelings that he does not deserve to be treated like a

11:29AM   13  criminal over and above a sole recognition of the harms he's

11:29AM   14  caused by his conduct and over and above the seriousness of

11:29AM   15  his criminal offense.  He is embittered that he is being

11:29AM   16  treated like a criminal.  There's no question the defendant

11:29AM   17  suffers from serious sexual dysfunction, but it's also true

11:30AM   18  that he committed a very serious crime.

11:30AM   19       Under the circumstances, the Court is unable to find

11:30AM   20  the defendant's entitled to acceptance of responsibility

11:30AM   21  downward adjustment.  The Court would do the defendant no

11:30AM   22  favor by pretending that he has taken his first steps towards

11:30AM   23  rehabilitation by accepting responsibility when that is simply

11:30AM   24  not yet the case.

11:30AM   25       Accordingly, the Court finds the adjusted offense

11:30AM  1  level should be properly calculated at level 40.  The criminal

11:30AM  2  history category should be properly calculated as category I.

11:30AM  3       Under this calculation, the advisory guideline range

11:30AM  4  for imprisonment is a term of 292 to 365 months.  The

11:30AM  5  statutory term of imprisonment is the mandatory minimum term

11:30AM  6  of 15 years and a maximum of 30 years.  The advisory guideline

11:30AM  7  range for supervised release is a term of five years to life.

11:30AM  8  The advisory range for a fine is from 50,000 to $500,000 plus

11:31AM  9  the cost of imprisonment and supervised release.

11:31AM  10       In accordance with the Supreme Court decision, *U.S.*

11:31AM  11  *v. Booker* and the Second Circuit decision, *U.S. v. Crosby*,

11:31AM  12  this Court must consider the guidelines, is not bound by them.

11:31AM  13  The Court must also consider the factors in 18 U.S.C. 3553(a).

11:31AM  14       Now, I have received 11 letters, including some

11:31AM  15  family photographs, which I have carefully considered.  I've

11:31AM  16  also considered the sentencing memorandum filed by the parties

11:31AM  17  in this matter.  All right.  Mr. Brown, I'll hear from you on

11:31AM  18  behalf of your client.

11:31AM  19       MR. BROWN:  Thank you, Judge.  Judge, we respectfully

11:31AM  20  object to the Court's denial of the adjustment for acceptance

11:31AM  21  of responsibility, but as we must, we certainly accept it for

11:31AM  22  today's proceedings.

11:31AM  23       Judge, when you look at the presentence report, a

11:31AM  24  picture of Mr. Lander emerges.  He's 42 years of age.  Other

11:32AM  25  than the instant offense, he has no criminal history, appears

11:32AM  1   to be an intelligent individual, did well in school, was

11:32AM  2   employed.  And by all accounts, from the letters that the

11:32AM  3   defense submitted to the Court and what we see in the

11:32AM  4   presentence report, he's a resourceful individual, apparently

11:32AM  5   very mechanically inclined, has musical ability, active in

11:32AM  6   family activities.

11:32AM  7          And it's always difficult, Judge, to get inside

11:32AM  8   someone's head and of course, at this stage of a proceeding,

11:32AM  9   it always sounds like an excuse.  And I don't offer excuses,

11:32AM  10  Judge, but rather an explanation.  And it sounds like at the

11:32AM  11  time Mr. Lander's parents divorced, that that was very

11:32AM  12  traumatic for him.

11:32AM  13         And in his own words, as reflected in the presentence

11:32AM  14  report, he recognizes that he's a sexually immature person and

11:33AM  15  he's wrestled with this child pornography problem for years.

11:33AM  16  And it's reflected in the presentence report that, on

11:33AM  17  occasion, he became so disgusted with himself for viewing this

11:33AM  18  material that he would smash his computer and withdraw --

11:33AM  19  cancel his internet access, only to find himself later on

11:33AM  20  going back to it.

11:33AM  21         And then he sought counseling that identified him as

11:33AM  22  suffering a generalized anxiety disorder, secondary to sexual

11:33AM  23  issues.  But it just -- it would have been good if -- it's

11:33AM  24  been reflected in the presentence report, at paragraph 81, and

11:33AM  25  he's -- so, he's wrestled with it and -- but he just -- it was

11:33AM   1   too much for him.  It's also reflected, Judge, in the

11:33AM   2   interview with the presentence report his feelings of disgust

11:34AM   3   with his activity.

11:34AM   4        So, I only point out, Judge, we're mindful of the

11:34AM   5   Court's comments earlier, but Mr. Lander does recognize he --

11:34AM   6   he recognized it when he would cancel his internet

11:34AM   7   subscriptions, he recognized it when he sought counseling and

11:34AM   8   he recognized it at the presentence interview when he

11:34AM   9   acknowledged the wrongfulness of what he was doing and the

11:34AM  10   fact that he was, himself, disgusted by his own activity, that

11:34AM  11   he really does feel remorse.

11:34AM  12        Now, it may well be that he hasn't expressed that in

11:34AM  13   court in the course of the effort to withdraw the guilty plea,

11:34AM  14   but he really does recognize what he did is profoundly wrong.

11:34AM  15   I mean, he gets it, Judge, that this isn't just a minor

11:34AM  16   infraction.  He absolutely gets it.

11:34AM  17        And the sentencing range that we now are faced with

11:35AM  18   are 292 to 365 is, for someone who's 42 year of age, likely

11:35AM  19   whatever sentence the Court imposes is going to result in

11:35AM  20   Mr. Lander not being again at liberty.  And candidly, Judge,

11:35AM  21   I'm not good enough to do the math, but I'm guessing he's

11:35AM  22   going to be maybe in his 60's or late 50's.

11:35AM  23        So, our request, Judge, would be that he be sentenced

11:35AM  24   certainly no higher than at the low-end of the guideline range

11:35AM  25   as calculated, based on what the Court's just told us.  And

11:35AM 1   frankly, we were asking, in our sentencing memorandum, that

11:35AM 2   the Court consider the low end of the guideline range as

11:35AM 3   recommended in the presentence report of 210 months.  Judge,

11:35AM 4   these numbers are so high that, we would respectfully submit,

11:36AM 5   there's a certain point beyond which it almost doesn't matter.

11:36AM 6        I mean, if someone is sentenced to 15 years or

11:36AM 7   18 years or 22 years, it's just such a chunk of one's life

11:36AM 8   that I would respectfully submit that sometimes it goes beyond

11:36AM 9   what's necessary.  Certainly, the sentence has to be

11:36AM 10  sufficient for the offense conduct and the nature of the

11:36AM 11  defendant, but we would respectfully submit there's no need to

11:36AM 12  get into these numbers that really snuff out any hope on the

11:36AM 13  part of the defendant of rejoining society in the future as a

11:36AM 14  productive member.

11:36AM 15       What Mr. Lander was interested in, Judge -- he's been

11:36AM 16  incarcerated now for an extended period of time.  He's had a

11:36AM 17  chance to look into what the Bureau of Prisons offers.  And

11:37AM 18  apparently, at the Devens in Massachusetts, they have a

11:37AM 19  program for sexual offenders.

11:37AM 20       And his interest, Judge, is not in simply being

11:37AM 21  warehoused for a period of time and then getting out and

11:37AM 22  resuming this activity.  He wants to get rid of it.  He wants

11:37AM 23  the time.  He recognizes that it's an extraordinary amount of

11:37AM 24  time he's going to spend locked up, but he wants to be as

11:37AM 25  productive as possible with it and his only goal is to not

| 11:37AM | 1 | engage in this activity in the future.  He just -- he wants to |
| 11:37AM | 2 | expunge this from his nature. |
| 11:37AM | 3 | And so, our request, Judge, is that the Court |
| 11:37AM | 4 | consider a sentence at the low end of the guideline range. |
| 11:37AM | 5 | And frankly, we would request that the Court give some |
| 11:37AM | 6 | consideration to the low end of the guideline range as |
| 11:37AM | 7 | recommended in the presentence report of 210 months, together |
| 11:37AM | 8 | with a recommendation to the Bureau of Prisons that he serve |
| 11:38AM | 9 | his sentence at the Devens Facility. |
| 11:38AM | 10 | THE COURT:  All right.  Sir, this is your opportunity |
| 11:38AM | 11 | to say anything you'd like to say. |
| 11:38AM | 12 | THE DEFENDANT:  I would just like to apologize to the |
| 11:38AM | 13 | victims and the families, as well as my family.  I |
| 11:38AM | 14 | disappointed everybody.  And what I have done is a heinous |
| 11:38AM | 15 | crime and there is no excuse.  As Mr. Brown spoke, I do wish |
| 11:38AM | 16 | to expunge this from my being by going through whatever |
| 11:38AM | 17 | programs are available.  I did seek counseling before I was |
| 11:38AM | 18 | arrested. |
| 11:38AM | 19 | And as Mr. Brown spoke, I do feel remorse for the |
| 11:38AM | 20 | victims.  It was a terrible thing I did and I had no excuse |
| 11:38AM | 21 | for it, but I certainly do not want to re-offend and I wish to |
| 11:38AM | 22 | do whatever's possible to alleviate that, so that that doesn't |
| 11:39AM | 23 | occur again.  Thank you. |
| 11:39AM | 24 | THE COURT:  Mr. DiGiacomo. |
| 11:39AM | 25 | MR. DIGIACOMO:  Yes, Your Honor.  Your Honor, as the |

11:39AM   1   Court's pointed out, they have a strong history of this case

11:39AM   2   and knowledge of the defendant and Judge --

11:39AM   3          THE COURT:  How long has this case been pending?

11:39AM   4          MR. DIGIACOMO:  Well, Judge, he was charged in 2013,

11:39AM   5   pled in '15 and now we're here in 2019.

11:39AM   6          THE COURT:  Over six years.

11:39AM   7          MR. DIGIACOMO:  Yes.  Yes, Your Honor.  This case has

11:39AM   8   been around for a long period of time.  And Judge, I know the

11:39AM   9   Court has alluded to they have read the government's papers

11:39AM   10  and -- with respect.  And Judge, realistically, I'm not

11:39AM   11  going to argue what's already in my papers that the Court's

11:39AM   12  already aware of, but, Judge, I think it needs to be called to

11:39AM   13  the Court's attention that Mr. Lander has a significant

11:39AM   14  attraction towards children and it's outlined in the

11:39AM   15  presentence investigation through his own admissions.

11:39AM   16         And as I noted in my papers, Judge, the aspect of

11:40AM   17  this crime is significant because it is a serious crime

11:40AM   18  because it involved children and having children touch

11:40AM   19  Mr. Lander inappropriately and put items on him that were

11:40AM   20  inappropriate.  And Judge, these are serious crimes, as the

11:40AM   21  Court's noted.

11:40AM   22         And Mr. Brown told the Court that the numbers are

11:40AM   23  high, that it's a chunk of one's time.  I don't disagree with

11:40AM   24  that, Judge, but when these e numbers -- these guidelines were

11:40AM   25  calculated, it was based on the fact that they looked at the

11:40AM 1   nature and circumstance of the crime.  As the Court pointed

11:40AM 2   out, Judge, these victims -- one will ever know how long they

11:40AM 3   will be impacted by this.  It may be the rest of their lives.

11:40AM 4   We hope not, but there's always that possibility.  So,

11:40AM 5   although Mr. Lander is facing a chunk of time, a significant

11:40AM 6   period of incarceration, in essence, the victims in these

11:40AM 7   cases often suffer a life sentence of which they don't have

11:40AM 8   any out at the end of the day.

11:40AM 9        And Judge, as Mr. Lander -- you know, he took

11:41AM 10  advantage, as I've noted in my papers.  He took advantage of

11:41AM 11  people who were at the house of either his mother or other

11:41AM 12  family members and he abused that position of trust and he

11:41AM 13  took that trust and he took it to a level that, in fact, it's

11:41AM 14  well beyond abuse what he did.  I mean, he violated these

11:41AM 15  victims when they thought they were potentially secure in

11:41AM 16  one's home.

11:41AM 17       So, Judge, when someone says that in the presentence

11:41AM 18  report, that he -- he's had physical contact with his wife but

11:41AM 19  he got more pleasure out of masturbating to images of children

11:41AM 20  or to their underwear is someone who clearly is a danger to

11:41AM 21  society.

11:41AM 22       Mr. Lander has progressed from looking at it to -- he

11:41AM 23  ultimately went to the final stage, which is touching.  And

11:42AM 24  with that, Judge, the government -- as the Court's aware, the

11:42AM 25  government has advocated for a sentence in their sentencing

| | | |
|---|---|---|
| 11:42AM | 1 | statement -- because the plea allowed the parties to allow to |
| 11:42AM | 2 | ask for a non-guideline sentence.  Judge, I'm asking the |
| 11:42AM | 3 | Court -- we think a sentence in the range of the low end of |
| 11:42AM | 4 | the guidelines would be sufficient in this case and we're |
| 11:42AM | 5 | asking the Court to impose that. |
| 11:42AM | 6 | THE COURT:  What is the low end that you're talking |
| 11:42AM | 7 | about? |
| 11:42AM | 8 | MR. DIGIACOMO:  Judge, the low end, based on the |
| 11:42AM | 9 | Court's calculation, would be the 292 to 364.  If the Court is |
| 11:42AM | 10 | looking at -- the government would be looking at the 292 |
| 11:42AM | 11 | range.  And the reason is, Judge, is the plea agreement |
| 11:42AM | 12 | allowed the parties to ask for a non-guideline sentence that |
| 11:42AM | 13 | would allow the Court to go up into the guidelines as now |
| 11:42AM | 14 | calculated by the Court. |
| 11:42AM | 15 | THE COURT:  All right.  We're going to take a five- |
| 11:42AM | 16 | minute recess.  I'm missing something from my file here.  It |
| 11:42AM | 17 | must be on my desk.  I'll be right back. |
| 11:42AM | 18 | THE CLERK:  All rise. |
| 11:53AM | 19 | (Brief recess.) |
| 11:53AM | 20 | THE CLERK:  All rise.  You may be seated. |
| 11:54AM | 21 | THE COURT:  Okay.  Mr. DiGiacomo, have a seat. |
| 11:54AM | 22 | MR. DIGIACOMO:  Thank you, Your Honor. |
| 11:54AM | 23 | THE COURT:  This Court is now ready to impose |
| 11:54AM | 24 | sentence.  Pursuant to the Sentencing Reform Act of 1984, it |
| 11:54AM | 25 | is the judgment of the Court that the defendant, Ryan C. |

11:54AM   1   Lander, is hereby committed to the custody of the Bureau of

11:55AM   2   Prisons to be imprisoned for a period of 262 months.  The cost

11:55AM   3   of incarceration fee is waived.  He shall forfeit his interest

11:55AM   4   in the property specifically set forth in section 7 of the

11:55AM   5   plea agreement and incorporated herein.

11:55AM   6           Upon release, he shall be placed on supervised

11:55AM   7   release for a period of 10 years.  He shall report in person

11:55AM   8   to the Probation Office in the district in which he is

11:55AM   9   released within 72 hours.  He shall comply with the standard

11:55AM  10   conditions of supervised release adopted by the Court.  He

11:55AM  11   shall not commit another federal, state or local crime.  He

11:55AM  12   shall be prohibited from possessing a firearm or other

11:55AM  13   dangerous device and he shall not possess a controlled

11:55AM  14   substance.

11:55AM  15           The instant offense occurred after September 1994.

11:55AM  16   However, since it's not related to illegal substances and he

11:55AM  17   does not have a history of substance abuse problems, the

11:55AM  18   mandatory requirements for drug testing is waived.

11:55AM  19           He shall, however, cooperate in the collection of a

11:56AM  20   DNA sample as required by the Justice For All act of 2004.  He

11:56AM  21   shall not use or possess any computer, data storage device or

11:56AM  22   any internet-capable device unless the defendant participates

11:56AM  23   in the computer and internet monitoring program or unless

11:56AM  24   authorized by the Court or the U.S. Probation Office.

11:56AM  25           He must provide the U.S. Probation Office with

11:56AM  1   advanced notification of any computer or computers, automatic

11:56AM  2   service or services, or connected device or devices that will

11:56AM  3   be used during the term of supervision.  The U.S. Probation

11:56AM  4   Office is authorized to install any application as necessary

11:56AM  5   to surveil all activities on the computer or computer-

11:56AM  6   connected device or devices owned or operated by the

11:56AM  7   defendant.  He shall be required to pay the cost of monitoring

11:56AM  8   services.

11:56AM  9        The U.S. Probation Office shall be notified via

11:56AM  10  electronic transmissions of impermissible or suspicious

11:57AM  11  activity or communications during such computer or connected

11:57AM  12  device consistent with the computer monitoring policy in

11:57AM  13  effect by the Probation Office as triggered by the

11:57AM  14  impermissible or suspicious activity.  He shall consent to and

11:57AM  15  cooperate with unannounced examinations of any computer

11:57AM  16  equipment owned or used by the defendant.

11:57AM  17       The examination shall include, but is not limited to,

11:57AM  18  retrieval and the copying of all data of computer or

11:57AM  19  computers, connected device or devices, storage media and any

11:57AM  20  internal or external paraphernalia and may involve removal of

11:57AM  21  such equipment for the purpose of conducting a more thorough

11:57AM  22  inspection.  Any such monitoring or examination shall be

11:57AM  23  designed to avoid as much as possible reading any privileged

11:57AM  24  information or any private material that is not illegal or

11:57AM  25  reasonably likely to lead to illegal material or evidence

11:58AM 1   related to illegal activity.

11:58AM 2          He must participate in sexual offense-specific

11:58AM 3   treatment program and follow the rules and regulations of that

11:58AM 4   program.  The Probation Office shall supervise the details of

11:58AM 5   the defendant's participation in the program, including the

11:58AM 6   selection of a provider and schedule.  The defendant is not to

11:58AM 7   leave treatment until complete or is ordered by the Court.  He

11:58AM 8   is required to contribute to the cost of services.

11:58AM 9          He shall not have any deliberate contact with any

11:58AM 10  child under 18 years of age, excluding any biological or

11:58AM 11  adopted children, unless it is approved by the probation

11:58AM 12  officer or by the Court.  He shall not loiter within 100 feet

11:58AM 13  of schoolyards, playgrounds, arcades or other primary places

11:58AM 14  used by children under the age of 18.  The Probation Office

11:58AM 15  has discretion to authorize the defendant to pick up any of

11:58AM 16  his children, if he has children, from any school or other

11:58AM 17  functions.  However, authorization must be obtained in advance

11:59AM 18  from the Probation Office or, alternatively, from the Court.

11:59AM 19         In order to monitor the defendant's compliance with

11:59AM 20  not buying or subscribing to online services that provide

11:59AM 21  child pornography, he shall provide the U.S. Probation Office

11:59AM 22  with access to any requested personal and/or business

11:59AM 23  financial information.

11:59AM 24         He shall register with the State Sex Offender

11:59AM 25  Registration Agency in a state where he is resides, is

11:59AM   1   employed, carries on a vocation or is a student and he shall

11:59AM   2   provide proof of registration to the Probation Office.  The

11:59AM   3   Probation Office is authorized to release the defendant's

11:59AM   4   presentence report to the New York State Board of Examiners of

11:59AM   5   Sex Offenders.  Further disclosure to the county court and to

11:59AM   6   parties involved in a determination of the defendant's final

11:59AM   7   classification level is also authorized.

11:59AM   8         He shall submit to a search of his person, property,

11:59AM   9   vehicle, place of residence or any other property under his

12:00PM   10   control based upon reasonable suspicion and permit the

12:00PM   11   confiscation of any evidence or contraband discovered.

12:00PM   12         He shall submit to a polygraph computer voice stress

12:00PM   13   analyzer or any other such testing not to exceed twice in a

12:00PM   14   calendar year and an additional two retests per year as

12:00PM   15   needed.  That testing may include examinations using a

12:00PM   16   polygraph, computerized voice stress analyzer or other similar

12:00PM   17   device to obtain information necessary for the supervision of

12:00PM   18   the defendant and any treatment.

12:00PM   19         He shall answer the questions posed during the

12:00PM   20   examination, subject to the defendant's right to challenge in

12:00PM   21   a court of law the use of such statements as violations of the

12:00PM   22   defendant's Fifth Amendment rights.  In this regard, he shall

12:00PM   23   be deemed not to have waived the defendant's Fifth Amendment

12:00PM   24   rights by making any such statements.  The results of any

12:00PM   25   polygraph, pretest and polygraph examinations may be disclosed

12:01PM 1  to the U.S. Probation Office and the Court, but shall not be

12:01PM 2  further disclosed without a court order.  The defendant's

12:01PM 3  required to contribute to the cost of services rendered.

12:01PM 4       The Court finds the defendant does not have the

12:01PM 5  ability to pay a fine.  The Court will not impose a fine.

12:01PM 6  However, I will order the mandatory special assessment of

12:01PM 7  $100, which is due immediately.  Payment shall begin under the

12:01PM 8  Bureau of Prisons Inmate Financial Responsibility Program.  I

12:01PM 9  will recommend that he be in -- the name of the facility?

12:01PM 10      MR. BROWN:  That was Devens, Your Honor.

12:01PM 11      THE COURT:  Devens.  Devens Facility in

12:01PM 12  Massachusetts.

12:01PM 13      MR. BROWN:  Yes, Judge.

12:01PM 14      THE COURT:  That's the recommendation that you made.

12:01PM 15      MR. BROWN:  Thank you, Judge.

12:01PM 16      THE COURT:  I will make that recommendation.

12:01PM 17      In determining the sentence, the Court has considered

12:01PM 18  the advisory range and the points raised by counsel, as well

12:01PM 19  as the defendant and the government, as to what the

12:01PM 20  appropriate sentence should be.  In addition, I've carefully

12:01PM 21  considered the factors in 18 U.S.C. 3553(a) and find the

12:01PM 22  sentence imposed is sufficient but not greater than necessary

12:01PM 23  to comply with the purpose of sentencing in 18 U.S.C.

12:02PM 24  3553(a)(2).

12:02PM 25      I note that between July 2011 and March 7th, 2013,

12:02PM 1  that he did produce images of child pornography involving a

12:02PM 2  19-month-old and a four-year-old child.  These victims were

12:02PM 3  the grandchildren of the mother's boyfriend.  The Court

12:02PM 4  carefully considered the seriousness of these activities and

12:02PM 5  facts.  The Court further noted that he was attracted to

12:02PM 6  children between the ages of 8 and 12 and falsely denied that

12:02PM 7  he had any sexual contact with these children.

12:02PM 8       I have given a variance here to the sentence and I

12:02PM 9  have that based upon he appears to, today, to have said an

12:02PM 10  indication of remorse.  I did factor that in.

12:03PM 11       MR. BROWN:  Thank you, Judge.

12:03PM 12       THE COURT:  Also, he's been in local custody for

12:03PM 13  over, I believe, six years.

12:03PM 14       MR. BROWN:  Yes, Your Honor.

12:03PM 15       THE COURT:  Which, obviously, is a facility that

12:03PM 16  doesn't have the treatment and the facilities that a federal

12:03PM 17  penitentiary would have.  I received seven letters of support

12:03PM 18  for him which, obviously, are encouraging to the Court that he

12:03PM 19  does have the family support and from his friends and his

12:03PM 20  family.

12:03PM 21       I also noticed that, based on all these factors, I

12:03PM 22  feel that he does show some signs of effort -- some signs, not

12:03PM 23  a lot -- in recognizing the seriousness of the offense and I

12:03PM 24  hope will take strong efforts to rehabilitate himself, so when

12:03PM 25  he does come out of prison that he will deal with this issue

12:04PM  1  and lead a law-abiding life and refrain from these desires

12:04PM  2  that he has with children.  I'm not imposing a fine.  I don't

12:04PM  3  believe he has the ability to pay a fine.

12:04PM  4          Now, he does have a right to appeal a lot of issues

12:04PM  5  here.  He has a right to appeal those issues to the

12:04PM  6  Second Circuit Court of Appeals.  I have sentenced at the high

12:04PM  7  end of the original range that was in the plea agreement.  I

12:04PM  8  gave that careful consideration and certainly, I looked at

12:04PM  9  that factor and I tried to impose a sentence that was fair and

12:04PM  10  reasonable under all the circumstance and I've done that to

12:04PM  11  the best of my ability.  I believe that pretty much covers

12:04PM  12  everything.  Mr. DiGiacomo?

12:04PM  13          MR. DIGIACOMO:  Yes, Judge.  We would move to dismiss

12:04PM  14  Counts 2 and 3 of the indictment.

12:04PM  15          THE COURT:  Motion is granted.  Court will dismiss

12:04PM  16  Counts 2 and 3.

12:04PM  17          MR. DIGIACOMO:  Thank you.

12:04PM  18          THE COURT:  Anything further?

12:04PM  19          MR. BROWN:  No.  Thank you, Judge.

12:04PM  20          THE DEFENDANT:  Thank you, Your Honor.

12:04PM  21          THE COURT:  Court will be in recess.

12:04PM  22          THE CLERK:  All rise.

12:10PM  23  (Proceedings ended.)

24

25

1            *     *     *     *     *     *     *

2

3         I certify that the foregoing is a

4 correct transcription of the proceedings

5 recorded by me in this matter.

6

7

8

9                  s/ Megan E. Pelka, RPR

10                  Court Reporter,

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25