UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RYAN C. LANDER,

                                   Petitioner,

          v.                                                    **DECISION AND ORDER**
                                                                    22-CV-20-A
                                                                    13-CR-151-A

UNITED STATES OF AMERICA,

                                   Respondent.

Before this Court is Petitioner Ryan C. Lander's *pro se* motion to correct, vacate, and/or set aside sentence, pursuant to Title 28, United States Code, Section 2255, Dkt. 205.[1] In his motion which was filed on January 7, 2022, Lander's sole contention is that his appellate counsel was ineffective for failing to raise, on direct appeal, this Court's denial of his motion to reconsider its prior denial of his motion to withdraw his plea. Dkt. 205, p. 8.  For the reasons which follow, Lander's motion to vacate is denied.

## I.     BACKGROUND

On July 11, 2013, Lander was charged in a three-count indictment with two counts of production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and

---

[1] References herein, unless otherwise indicated, are to documents filed on this Court's Docket in case 13-CR-151-A.  In addition to his § 2255 motion, Lander also filed a motion for leave to proceed in forma pauperis. Dkt. 206.  Such motion was not required. *See* Advisory Committee Notes to Rule 3 of the Rules Governing § 2255 Proceedings ("[t]here is no filing fee required of a movant under these rules"; and "there is no need to have an in forma pauperis affidavit to proceed with [an] action since there is no requirement of a filing fee for filing [a § 2255] motion").

(e), and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). Dkt. 15.  Each production count involved a different minor victim. *Id*.

A. **The Plea and Offense Conduct:**

On February 4, 2015, Lander executed a plea agreement that his attorney, Barry Covert, Esq., also signed. Dkt. 57.  In it, Lander agreed to plead guilty to one count of production of child pornography in full satisfaction of the charges against him. *Id*.  Specifically, Lander admitted that beginning in 2008 and continuing for approximately five years, he produced child pornography by using, persuading, coercing, and/or enticing children under the age of twelve to engage in sexually explicit conduct.  *Id.*, pp. 4-5.

Lander confirmed that he had reviewed the entire plea agreement, discussed it with Covert, and that he was signing it voluntarily and of his own free will. *Id.*, pp. 14-15.  As part of such plea agreement, which contemplated a Sentencing Guidelines range of 210 to 262 months' imprisonment, Lander explicitly waived his right to appeal or collaterally attack any component of the sentence that fell within the contemplated sentencing range.  *Id.*, p.11.  In addition to the written plea agreement, this Court conducted an extended colloquy of Lander during the change of plea hearing. Dkt. 75.  During that colloquy, Lander confirmed that he was "fully satisfied" with the advice and counsel he had received from Covert, had no complaints, and that no one was forcing or threatening him to plead guilty. *Id.*, pp. 4, 23. This Court reviewed each paragraph with Lander to ensure he understood the full meaning of the plea agreement. *Id.*, pp. 4-21.  Covert confirmed that he had reviewed the Sentencing

Guidelines with Lander "[m]any times." *Id.*, p. 14.  This Court offered Lander the opportunity to ask questions, and he declined. *Id.*, p. 21.  After explaining the rights that Lander was giving up by pleading guilty, this Court asked if Lander was "doing this voluntarily, of your own free will, no one's forcing you to do this?" *Id.*, p. 26.  Lander replied, "Yes, sir."  *Id.*    This Court found that Lander's guilty plea was knowing, voluntary, and supported by an independent basis of fact covering each element of the offense. *Id.*, p. 27.

As determined in his Presentence Investigation Report (PSR),  Lander's victims ranged in age from 8 years old to just 19 months. Dkt. 172, ¶ 12.  His crimes were discovered when a Department of Homeland Security investigation found over 3,300 images of prepubescent children posted on a website known for child exploitation by a user known as "pantysnfr."  *Id.*, ¶ 12.  Law enforcement tracked the "pantysnfr" profile to Lander's home in Dansville, New York. *Id.*,  ¶ 13.  On March 7, 2013, agents went to Lander's residence and interviewed him there. *Id.*,  ¶ 14.  During that interview, Lander admitted to being "pantysnfr" and to posting the photos. *Id*. ¶ 14. Lander explained to agents that he was attracted to young children, including relatives, because they were something he could not have. *Id.*, ¶ 14. Lander signed a consent to search form allowing agents to seize and search his computers, portable storage devices, and camera. *Id.*, ¶ 15. Agents subsequently discovered a number of child pornography images on the devices, including a photograph of a young child sitting next to Lander with their hand on his penis. *Id.*, PSR ¶ 16.

B.    <u>**Motion to Withdraw**</u>

Over a year after he signed his plea agreement, Lander sent a *pro se* letter to this Court in which he said he didn't feel "right" about his guilty plea. Dkt. 74. Lander asserted, for the first time, that Covert had "pressured" him into pleading guilty, even though Covert had been "very cordial." *Id*. Lander asserted that Covert had offered "no defense and minimal representation," and claimed he had not been given copies of the government's evidence.  Lander asked the Court to appoint a different attorney who would represent him "more effectively" than Covert. *Id*.

Subsequently, Covert filed an affidavit in which he stated that he met with Lander to prepare the motion to withdraw the guilty plea, but that he believed an actual conflict existed." Dkt. 80. In a *pro se* letter dated July 6, 2016, Lander explained that he wanted to include allegations about Covert's supposed deficiencies in the motion. Dkt. 104. The unsworn letter alleged that Covert had provided ineffective assistance of counsel and had "threatened" Lander with a "retaliatory high sentence" unless he pleaded guilty and alleged that Covert had repeatedly adjourned court dates until Lander acquiesced to the plea deal. *Id*. Lander also professed his innocence. *Id*.  This Court, thereafter, granted Covert's request to withdraw and eventually Patrick J. Brown, Esq., was appointed to serve as Lander's new attorney. 13-CR-151, <u>Dkt. Entries</u>, *dated 7/6/16 through 11/28/16*.

Represented by new counsel, Lander, on March 8, 2017, moved to withdraw his prior plea of guilty. Dkt. 88. In his motion, Landers, while no longer asserting his innocence, instead complained that Covert "coerced" him into pleading guilty by advising him there was no viable defense to the charges and that he would "likely

fac[e] significantly more jail time" if he proceeded to trial. Dkt. 88, p. 3. The alleged coercion included Covert advising Lander that if he did not affirmatively answer this Court's questions during the colloquy, he would have to proceed to trial where he would likely be convicted and receive a significant prison sentence. *Id*., p. 4. Lander further asserted that he did not receive a copy of Covert's omnibus motion (Dkt. 31) or detailed information about the images of child pornography. *Id*. Lander claimed that had he seen the suppression motion prior to pleading guilty he would not have pled guilty. *Id*. Lander asserted that had such motion been argued, the incriminating evidence would have been suppressed because: (1) Lander never received a property receipt for the items seized; (2) law enforcement did not administer *Miranda* warnings; and (3) officers "coerced" him into signing a consent to search form. *Id*.[2]

### C.    Original Order Denying Motion to Withdraw

On May 11, 2017, this Court denied Lander's motion to withdraw the guilty plea. Dkt. 94.  In doing so, the Court observed that Lander had "repeatedly and in a variety of ways" confirmed his understanding of the plea agreement and sworn that he was not being coerced into pleading guilty. *Id*., p. 5. Lander had "unequivocally testified he was pleading guilty of his own free will." *Id*., p. 8.  Further, Lander's thirteen-month delay between the plea and his first *pro se* letter strongly suggested he had not been coerced. *Id*., p. 9.  The Court also noted that Lander's "glaring failure" to protest his innocence in his first *pro se* letter or the counseled motion to withdraw the plea tended to show that Lander pled guilty because he was, in fact, guilty. *Id*.

---

[2] Lander did not specify how law enforcement allegedly coerced him into consenting to a search. *Id*.

### D.    The Motion for Reconsideration

On June 21, 2017, Lander filed a motion to reconsider with yet new allegations. Dkt. 100 & 104. In it, Lander asserted that Covert had confessed that he coerced Lander into accepting the plea. *Id*. Notably, however, Lander formally withdrew the claim of innocence he previously asserted in his July 2016 letter. Dkt. 107, p. 2.  In a series of text orders, this Court requested that Lander provide further factual explanation and legal analysis of the possible waiver of attorney-client privilege with Covert. *See, e.g.*, Dkt. 101, 102, 103, 106, 108, 110, 114, 116, 121, 136.

In response, Lander filed an affidavit with more new allegations. Dkt. 119,  pp. 1-5. This time, Lander asserted that Covert spoke to him with a "condescending tone," from which Lander inferred that Covert believed that he "deserved to be in jail." Dkt. 119, p. 4. Lander claimed that he entered a guilty plea because the only alternative was to proceed to a trial where he would likely be found guilty and receive a longer sentence. *Id.*, p. 5. This Court decided to conduct a hearing Lander's motion to withdraw his plea of guilty. Dkt. 146.

### E.    Hearing on Motion for Reconsideration

On June 18 and 19, 2019, this Court conducted an evidentiary hearing on Lander's motion to reconsideration.  At that hearing, Lander testified that Covert gave him a copy of the indictment, discussed the charges with him, and met with him in person "many times."  Dkt. 192, p. 15. Covert explained the government's proof to him, shared evidence with him, discussed the possibility of evidence being thrown out, and said he would file a pretrial omnibus motion. *Id.*, p. 15, 19, 30.  In Covert's professional opinion, the physical images were "pretty bad." *Id.*, pp. 32-33.  Lander

claimed he did not receive a copy of the omnibus motion but also confirmed that he had signed a declaration and reviewed the government's response to the motion. *Id*., pp. 16-17. Lander conceded that, at least initially, Covert "seemed to be doing a lawyer job," *id.*, p. 25, and was "an excellent attorney." *Id*. p. 43.

Covert explained to Lander that if he went to trial, Lander could face sixty years' imprisonment. *Id*., p. 30. Lander and Covert discussed "trial and signing the plea agreement many times," during which Covert explained that "he did not feel there was any kind of defense." *Id.*, p. 18. Lander claimed that Covert refused to discuss "defense options" that he suggested but could not recall what the options were. *Id*. Lander had no legal training, but nevertheless believed that evidence would have been suppressed had there been oral argument. *Id*., p. 34. Lander felt that Covert was condescending and did not listen to Lander's viewpoints, speculating that the alleged change in attitude occurred because Covert was not being paid enough. *Id*., p. 20, 25-26, 62.

Covert subsequently presented Lander with a negotiated plea agreement and advised him that if they proceeded to argue the motion, the government would not enter the agreement. *Id*., pp. 17, 51, 58. When Lander finally said he "guess[ed]" he would have to sign the plea agreement, Covert counseled him, "well, you can't guess. You have to say you want to sign the plea agreement." *Id.*, p. 21. Lander testified that at some point—he could not remember when—his father told him that Covert had said, "if someone did this to my children, I would shoot them." *Id.*, pp. 21-23. Lander did not ask Covert for further context of the statement. *Id.*, p. 53. Lander claimed Covert also told his father, "of course the plea was coerced. There's a certain amount

7

of coercion that goes into all plea deals." *Id.*, p. 24. Lander testified that his father pressured him into pleading guilty by being "my father and I respect him as a [retired] judge and I respected his opinion." *Id.*, p. 49.

In Lander's view, he only pleaded guilty because he did not receive the specific "[l]egal arguments and the case law" in the omnibus motion, Covert had a "condescending tone," and Covert made "the comments that he made[.]" *Id.*, p. 60. Lander's father testified that Lander never sought to ask the Court for a different attorney before he pled guilty. *Id.*, p. 103.

Covert testified that he reviewed discovery and other materials from the government in a timely fashion, arranged to view the child sexual abuse material at the U.S. Attorney's Office, and interviewed Lander. Dkt. 198, p. 116. Covert recalled that the government's evidence included still images and video recordings of "young toddlers . . . who were touching a grown male's genital area" and "it very much appeared to be Mr. Lander[.]" *Id.*, pp. 123-24.  The voice heard in video recordings also sounded like Lander. *Id*. Lander had made a statement to law enforcement that "certainly was not helpful to the defense." *Id.*, p.124.

Covert discussed the issues in the case "thoroughly" with Lander and went over all the possible defenses as well as potential challenges to the evidence, meeting with Lander in person at various facilities. *Id.*, pp.118-19. "[W]e all knew that the only real way to win this case was a suppression motion," *id.*, p. 138, and Lander was "very actively involved in formulating the theory that we were utilizing in our suppression motions."  *Id.*, p.152.  Covert had many discussions with Lander as to the nature of the suppression motion, the contents, and his factual narrative that would be used to

support the motion. *Id.*, p.153.  Lander signed an affidavit in support of the motion. *Id.*, pp.150-51. However, Covert was unable to review a full copy of the motion with Lander prior to filing because he indicated he did not want to receive paperwork that revealed the nature of the charges—in case anyone else in the facility could access it. *Id.*, pp.138, 140-41, 154-155. Covert reviewed the motion with Lander in person at their next meeting. *Id.*, pp. 213-14.

After an extensive review of the case law relating to suppression and the facts of this case, Covert concluded that it would be extremely difficult to prevail on the suppression motion, in part because Lander had signed a consent form. *Id.*, pp.134-35.  Moreover, "there were no obvious winning defenses in this case [.]"  *Id.*, pp.130-31.  Lander's father testified that Covert told him "[w]hen a jury comes in, they're going to have him guilty as soon as they walk in the door."  Dkt. 192, pp. 102-03. Based on his review of the evidence, all pertinent facts, the likelihood of success on suppression, the strength of the government's case, and his discussions with other experienced criminal attorneys in his firm, Covert recommended that Lander should plead guilty if he could obtain a favorable agreement. Dkt. 198, pp. 129-29. He advised Lander that going to trial is "roll[ing] the dice[.]" *Id.*, p. 131.

Covert conducted "very extensive" negotiations with the government to procure better terms. *Id.*, pp. 119-20, 137, GEX 13- 22.[3] As a result, Covert successfully advocated for the removal of an enhancement from the draft plea agreement, resulting in a lower Sentencing Guidelines range.  Dkt. 198, pp. 175-76. Notwithstanding

---

[3] References preceded by "GEX" are to Exhibits received into evidence at the reconsideration hearing held before this Court on June 18-19, 2019. Dkt. 192-198.

Lander's feeling that the 15-year minimum sentence was "not reasonable," *id.*, pp. 182-185, Covert had to deal with the "reality" of the mandatory minimum. *Id.*, p. 179. In Covert's view, the Sentencing Guidelines provided for harsh terms of imprisonment for child pornography offenses, so a comparatively lower term negotiated in the plea agreement would still seem long. *Id.*, pp. 178-79. In that way, Lander felt "darned if he did and darned if he didn't" with relation to the plea agreement[.]" *Id.*, p. 179.

Covert explained that he used the word "coercion" in the same context that court decisions have. *Id.*, pp. 177-78. Covert denied saying something to the effect of, "I will shoot somebody who does this to my children." *Id.*, p. 191. Covert tried to impress upon Lander what someone's initial reaction might be upon finding out that something like this happened to their children. *Id.*, pp. 191-92. Lander and his father had "a continuing under-appreciation for the harm" that the victims' families would articulate. *Id.*, pp. 197-98. Lander's father insisted that the damage to the victims was not serious because, he said, they would be too young to remember the events. *Id.*, p. 197. In response, Covert indicated that human beings tend to have a visceral reaction to hearing these kinds of allegations, especially since they involved toddlers. *Id.*, pp. 196-97. At Lander's request, Covert asked for several adjournments so that Lander could consider the plea agreement. *Id.*, pp. 184-86. Lander never affirmatively said he wanted a trial; he only ever said he did not want to take the plea offer. *Id.*, p. 206. Eventually, Covert warned Lander that he had to decide one way or the other, because "inaction would lead to the withdrawal of the plea agreement and proceeding with the motions, argument and potentially the trial." *Id.*, pp. 187-88; GEX 19 & 20). At

that point, Covert felt that he would not be able to get any more adjournments. Dkt. 198, pp. 201-202

In their final meeting before the guilty plea, Covert told Lander that if he was going to accept the plea agreement, he had to do so "fully;" Lander could not equivocate. *Id.*, p. 205. Covert denied telling Lander that if he expressed his displeasure with the minimum sentence that this Court would not accept the plea agreement. *Id.*, p. 228. Covert was emphatic that he never felt animosity towards Lander. *Id.*, p. 199. He acknowledged that Lander probably felt upset because it was a long sentence despite the "very [] beneficial plea agreement to only one charge as opposed to the possibility of consecutive sentences." *Id.*, p. 200. Covert testified that if Lander was his own son, he would still have advised him to take the plea. *Id.*, p. 232.

### F.    This Court's Denial of the Motion for Reconsideration

On June 28, 2019, this Court denied Lander's reconsideration motion in an oral decision. Dkt. 195. The Court, based upon the evidence at the hearing and its long-standing involvement in the case, determined that while Lander clearly had mixed feelings about his decision to plead guilty, his belated claims that Covert had coerced him and coached him on the allocution were simply "not true." *Id.*, p. 13. The hearing confirmed that Lander was an intelligent, persistent person who had entered his plea voluntarily and "was not psychologically coerced" into doing so. *Id.*, p. 2. In fact, Lander had conceded during his testimony that Covert's legal assistance was "generally excellent." *Id.*, p. 5. Lander's opinion was borne out by the terms of the plea agreement Covert secured: it contemplated an advisory range of imprisonment

of 210 to 262 months on a single count of the indictment, while the statutory maximum for all potential charges was eighty years in prison. *Id.*, pp. 5-6. The Court determined that the plea agreement was favorable to Lander and "there was no realistic chance of an acquittal," a point highlighted by Lander's admission of guilt at the hearing. *Id.*, p. 3.  This Court also rejected as patently incredible and without merit Lander's claims that Covert labored under a conflict of interest, harbored personal animus towards him, concealed the merits of the suppression motion, and "tricked" him into pleading guilty.  *Id.*, pp. 4,  7-10. This Court determined that Covert's representation of Lander was "much better than Constitutionally effective counsel," *id.*, p. 15, and discussed the suppression motion with him "more than was reasonably necessary" to make an informed decision whether to plead guilty. *Id.*, p. 8.

This Court noted that Covert had said "words to the effect that many family members of the child victims of sexual exploitation of the kind perpetrated by the defendant would be inclined to harm or even to shoot the perpetrator," and that Covert may even have expressed that he too would feel that way. *Id.*, p. 11. However, the Court found these statements were reflective of Covert's reasonable concerns about sentencing considerations that "any competent attorney would have had in the circumstances," and of Covert's attempts to focus Lander during "drawn out and fitful plea negotiations[.]" *Id.*, pp. 11-12. Lander simply did not want to accept the "legal realities" of the case against him. *Id.*, p. 14.  This Court further found Covert's statement to Lander's father about the plea being coerced was not a confession of nefarious conduct, but an almost verbatim quote from the Second Circuit's decision in *United States v. Juncal*, 240 F.3d 166 (2d Cir. 2011).  *Id.*, pp. 14-15.  Ultimately, this

Court found that Lander's "change of heart about his guilty plea . . . is not sufficient reason for withdrawal of a validly entered guilty plea." *Id.*, p. 13.

### G.    Lander's Sentence and Appeal

On August 8, 2019, this Court sentenced Lander principally to a term of imprisonment of 262 months and 10 years of supervised release. Dkt. 178. Such term was within the appeal waiver provisions of his plea agreement. Dkt. 57, ¶ 26.

Lander's, represented by a new appointed attorney, Stephanie M. Carvlin, Esq., filed a direct appeal, and in it, Lander's appellate counsel asserted four issues: (1) whether the government breached the terms of the written plea agreement by opposing a level reduction for acceptance of responsibility based in response to Lander's attempts to withdraw his plea on grounds other than innocence; (2) whether the district court violated Lander's Sixth Amendment right to counsel by, in his view, ordering him to proceed *pro se* rather than conduct an inquiry into his assertion that counsel labored under an actual conflict of interest; (3) whether Lander's plea agreement was supported by insufficient consideration such that the Second Circuit should find the appellate waiver unenforceable; and (4) whether the government's invitation to the district court to base its sentence in part on unusual, but not illegal, sexual behavior by Lander tainted the sentencing. *See United States v. Lander*, Appellate Brief, Brief for Defendant-Appellant, 2020 WL 759550 (C.A.2 February 6, 2020).

By mandate issued November 30, 2020, *see*, Dkt. 200, the Second Circuit Court of Appeals affirmed Lander's conviction and sentence in a summary order. *United States v. Lander*, 825 F. App'x 44 (2d Cir. 2020). The Second Circuit

determined that (1) the government did not breach the plea agreement, (2) Lander was not deprived of effective conflict-free representation, (3) the appellate waiver in the plea agreement was enforceable and the plea agreement was supported by consideration, (4) and because the waiver was enforceable, it declined to consider Lander's remaining arguments as to his sentence. The Supreme Court denied certiorari on March 1, 2021. *See Lander v. United States*, 141 S.Ct. 1507 (2021). On January 7, 2022, Lander filed the instant *pro se* petition pursuant to 28 U.S.C. § 2255, alleging his sentence should be vacated because he was denied effective assistance of appellate counsel when she failed to raise the preserved issue on direct appeal regarding the district court's denial of his motion for reconsideration of the denial of his motion to withdraw his guilty plea. Dkt. 205.

## II.   DISCUSSION

At its heart, Lander's claim is that his appellate counsel was ineffective for failing to argue on appeal that this Court erred in denying his motion to reconsider its original decision denying his request to withdraw his plea based upon his claim that attorney Covert provided him with ineffective assistance of counsel.  For the reason's which follow, such claim is frivolous.

### A.   <u>The Law</u>

Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. The question of ineffective assistance is determined by a two-part test.  A defendant must demonstrate "(1) that counsel's performance was so unreasonable under prevailing professional norms that

counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment; and (2) that counsel's ineffectiveness prejudiced the defendant such that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Habbas*, 527 F.3d 266, 273 (2d Cir. 2008) (quoting *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004)).

"*Strickland*'s two-prong test applies equally to claims of ineffective assistance of appellate counsel on a defendant's first appeal as of right." *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001). However, to demonstrate deficient performance of appellate counsel, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument. Counsel is not obliged to advance every nonfrivolous argument that could be made." *Id*. Instead, the petitioner must demonstrate "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). Evidence pertinent to a court's evaluation of a petitioner's ineffective-assistance claim may include "affidavits from former defense counsel regarding his strategy or explaining his conduct" and "affidavit[s] from the defendant" regarding defense counsel's conduct during trial court proceedings. *United States v. Capre-Herrera*, 249 F. App'x 881, 882 (2d Cir. 2007) (citing *United States v. Khedr*, 343 F.3d 96, 99–100 (2d Cir. 2003); *Massaro v. United States*, 538 U.S. 500, 504–05 (2003)).

With respect to the first prong—deficient performance—the inquiry is "highly deferential" and requires that "every effort be made to eliminate the distorting effects

of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. The petitioner seeking relief must overcome the "strong presumption" that counsel's performance fell "within the wide range of reasonable professional assistance," i.e., that counsel's conduct reflected reasonable strategic choices. *Id*.

Regarding the second prong—prejudice—a reasonable probability of a different outcome means a "probability sufficient to undermine confidence in the outcome." *Id*. at 694. Specifically, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland*, 466 U.S. at 693); see also *Strickland*, 466 U.S. at 693 ("[N]ot every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."). Moreover, "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). Second Circuit precedent generally "requires some objective evidence other than defendant's assertions to establish prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003).

### B. <u>Analysis</u>

It is well-settled that appellate counsel may choose, for strategic reasons, to raise only the most promising issues in an appellate brief. *Jones v. Barnes*, 463 U.S.

745, 751-52 (1983); *see also* Second Circuit Local Rule 28.1.1 (imposing word count limitations on appellate briefs).  Since Lander lacks the "right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points," *Jones*, 463 U.S. at 751, *a fortiori*, Lander does not have the right to have compelled his appellate counsel to raise baseless, frivolous arguments in an appellate brief.

As the facts set forth above readily establish, this Court previously conducted an evidentiary hearing wherein it exhaustively explored—and resoundingly rejected—Lander's claim that attorney Covert was ineffective because he coerced him take a plea. "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quotations and citations omitted).  As the Second Circuit decided on Lander's direct appeal, "we conclude that the district court did not deprive Lander of his Sixth Amendment right to effective, conflict free counsel at any point in the litigation*." United States v. Lander*, 825 F. App'x at 45.  Moreover, the Court of Appeals also concluded that "the appellate waiver term in Lander's plea agreement is enforceable."  *Id*.  Arguably, such conclusions by the Second Circuit are in and of themselves sufficient to foreclose Lander's claim here based on the mandate rule.  *See*, *United States v. Bhaskar*, No. 19-CR-7-S, 2025 WL 548442, at *4 (W.D.N.Y. Feb. 19, 2025)(the mandate rule "bars ineffective-assistance-of-counsel claims that were raised and resolved on direct

appeal, as well as those involving factual predicates that while not explicitly raised on direct appeal, were impliedly rejected by the appellate court mandate").

Regardless of whether Lander's claims are foreclosed under the mandate rule, however, the dispositive conclusion here is that because this Court previously found, following an evidentiary hearing, that Mr. Covert's assistance of counsel was not ineffective, Ms. Carvlin's decision to forego arguing the same on appeal did not constitute ineffective assistance of counsel because Lander's cannot show that he was prejudiced by that decision. Another Court in this Circuit had occasion to reject a nearly identical claim in *Santana v. United States*, No. 17-CR-438 (VEC), 2022 WL 2981365 (S.D.N.Y. July 28, 2022). In *Santana*, petitioner, like Lander, claimed that his trial attorney "coerced [him], directly and through [his] family, into accepting a guilty plea that he would not otherwise have accepted." *Santana*, 2022 WL 2981365, at *3. Petitioner Santana, like Lander, further claimed that his appellate counsel, who was different from his trial counsel, was ineffective for failing to appeal the denial of his motion to withdraw his plea. *Id*. The district court rejected such argument "[m]ost critically, because the Court finds that [trial counsel]'s assistance of counsel was not ineffective, [appellate counsel]'s decision to forego arguing the same on appeal cannot constitute ineffective assistance of counsel because [petitioner] was not prejudiced by that decision." *Santana*, 2022 WL 2981365, at *7. This Court concludes that the same rationale controls here and requires that Lander's petition be denied.

III.   **CONCLUSION**

For the reasons set forth above, Lander's motion to vacate, set aside, or correct his sentence (Dkt. 205) and his motion to proceed in forma pauperis (Dkt. 206) are **DENIED**.  Further, pursuant to 28 U.S.C. § 2253(c)(1) and Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court declines to issue a certificate of appealability because Lander has not made a substantial showing of the denial of a constitutional right. Finally, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal taken from this decision would not be taken in good faith. Thus, leave to appeal *in forma pauperis* is denied. Lander is advised that "Federal Rule of Appellate Procedure 4(a) governs the time to appeal," and "[a] timely notice of appeal must be filed even" though the Court declined to issue a certificate of appealability. Rule 11(b) of the Rules Governing Section 2255 Proceedings.

**IT IS SO ORDERED.**

*s/Richard J. Arcara*

HONORABLE RICHARD J.  ARCARA
SENIOR U.S. DISTRICT JUDGE

Dated:  March 11, 2025
        Buffalo, New York.